UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL ARNOLD #308227,

    *Plaintiff*,           CASE NO. 2:15-cv-10608

*v*.                    DISTRICT JUDGE NANCY G. EDMUNDS
                      MAGISTRATE JUDGE PATRICIA T. MORRIS

STEVEN RIVARD, et al.,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the reasons stated below, I recommend that:

    1.    Defendant Kirtida Patel's motion to dismiss (Doc. 39.) be **GRANTED**

    2.    Defendant Corizon Health Services, L.L.C. motion for summary judgment (Doc. 19) be **DENIED AS MOOT**

    3.    Defendants Steven Rivard, Carl Herring and Russell Scabbo's motion for summary judgment (Doc. 32) be **DENIED AS MOOT**, and

    4.    Plaintiff's claim be **DISMISSED WITHOUT PREJUDICE** as to all defendants.

**II.    REPORT**

    **A.    Introduction and Procedural History**

This case was referred to Magistrate Judge Patricia T. Morris, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), for resolution of all pretrial matters on April 20, 2015.

(Doc. 7.) Plaintiff is a *pro se* prisoner currently incarcerated at Woodland Center Correctional Facility ("WCC") in Whitmore Lake, Michigan. (Pl. Compl. Doc. 1 ¶ 3.) The events that gave rise to the allegations in the Complaint occurred while Plaintiff was incarcerated at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan. (*Id.* ¶ 3.)

Plaintiff's verified complaint alleges that his Eighth and Fourteenth amendment rights were violated by the denial of adequate mental health treatment. (Doc. 1 ¶¶ 24-30.) Defendants are (1) Corizon Health Services L.L.C. ("Corizon"),[1] (2) Dr. Kirtida Patel, and (3) Michigan Department of Corrections ("MDOC") employees Carl Herring, Russell Scabbo, and SLF Warden Steven Rivard (hereinafter MDOC Defendants). (*Id.* ¶¶ 24-25.) Plaintiff seeks injunctive relief and compensatory and punitive damages. (*Id.* ¶¶ A-E.) On July 8, 2015, Corizon filed a motion to dismiss. (Doc. 19.) Defendant's original response was a motion for permission to file an objection. (Doc. 30.) Corizon then filed a reply. (Doc. 31.) On August 18, 2015, the MDOC Defendants filed a motion for summary judgment. (Doc. 32.) This Court entered an order requiring Plaintiff to respond by September 23, 2015; however, Plaintiff did not file a response. (Doc. 36.) On September 29, 2015, this Court granted Plaintiff an extension to file a brief in response to Corizon's motion to dismiss and the MDOC Defendants motion for summary judgment. (Doc. 37.) On October 13, 2015, Plaintiff filed a two-page document which responds to the motion to dismiss and the motion for summary judgment. (Doc. 44.) On October 10, 2015, Petal filed a motion to dismiss (Doc. 39) and an accompanying brief. (Doc. 40.) This Court entered an improvident order requiring Plaintiff to respond by November 3, 2015. (Doc.

---

[1] In Plaintiff's complaint he names Defendant Corizon Health Services Inc. (Doc. 1 ¶ 24.)

41.) Plaintiff filed a response on October 13, 2015. (Doc. 43.) This Court then filed an amended order requiring Plaintiff to respond by November 20, 2015. (Doc. 42.) On November 9, 2015, Plaintiff filed a second response to Petal's motion to dismiss in which he simply states that he objects to the motion. (Doc. 48.) Accordingly, these three motions (Doc. 19; Doc. 32; Doc. 39.) are ready for report and recommendation without oral argument under Local Rule 7.1.

### 1. Petal's Motion to Dismiss (Doc. 39)

Petal asserts that he is entitled to dismissal of Plaintiff's complaint because Plaintiff failed to satisfy the exhaustion rule, which is a precondition to filing suit. (Doc. 40, at 3.) In support of this allegation, Petal relies on a certified MDOC Prisoner Step III Grievance Report. (Doc. 40, Ex. 1.) As an initial matter, I note that the court may take judicial notice of a prisoner's administrative grievances for purposes of determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Bradfield v. Corr. Med. Servs.*, 2008 U.S. Dist LEXIS 124550, at *9-14 (W.D. Mich. July 3, 2008). Thus it is not necessary to convert the motion to one for summary judgment under Rule 12(d). *Id.*

#### a. Standards

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that

came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion

4

would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies--specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

    *b.*   *MDOC policy*

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130. The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal Form. . . ." The Step III response concludes the administrative grievance process.

According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B),(FF),(GG). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### c.     *Analysis and Conclusions*

Here, Plaintiff filed eleven grievances through Step II. (Doc. 1, at Pg. ID 15-43.) Petal has submitted a grievance report from the MDOC showing that eight grievances were submitted at Step III in 2014. However, each grievance was returned to Plaintiff, with a cover letter requesting documents from Steps I and II. (Doc. 40, Ex. 1, at Pg. ID 256-57.) Plaintiff never filed the Step III grievances with the requisite documentation from Steps I and II. Thus Plaintiff did not properly exhaust available remedies because he did not properly file a Step III grievance. *See* MDOC PD 03.02.130(B),(FF),(GG).

In his complaint, Plaintiff concedes that he did not exhaust his available remedies; but argues that he was unable to do so because he was on Modified Access (grievance restriction.) (Doc. 1 ¶ 21.) He does not further develop this argument in either response to Dr. Petal's motion. (Doc. 43; Doc. 48.)

There is no constitutional right to grievance procedures, nor does the Constitution protect access to any such procedures voluntarily established by the states. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000). A Michigan prisoner's ability to use the grievance procedure is not derived from mandatory language in any regulation

and placement on modified access status does not constitute an "atypical and significant hardship" on a prisoner. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The Sixth Circuit has also held that since modified access merely requires the prisoner to obtain permission from the grievance coordinator before filing a grievance, it does not infringe on the prisoner's ability to seek redress for meritorious grievances. *Corsetti v. McGinnis*, 24 F.App'x 238, 241 (6th Cir. 2001). Accordingly, Plaintiff's modified access status does not relieve him of the duty to properly exhaust administrative remedies.

I therefore suggest that Plaintiff has failed to exhaust his administrative remedies and that Dr. Petal's motion for summary judgment should be granted.

### 2. MDOC Defendants and Corizon

The MDOC Defendants and Corizon do not raise the affirmative defense of failure to exhaust available administrative remedies in their respective motions for summary judgment (Doc. 32) and to dismiss for failure to state a claim. (Doc. 19.) Nevertheless, under the circumstances of this case, I suggest that the claims against them should be dismissed on the same grounds as Defendant Petal.

Failure to exhaust administrative remedies is an affirmative defense for which Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. Neither party has filed an answer in this case, thus the affirmative defense of exhaustion has surely not been waived. If the court were to review the merits of the motions and find that they were not meritorious the remaining Defendants would then file their answer and assert exhaustion as a defense at that time. "[N]o

principal forbids a court to notice that [an affirmative] defense exists, is bound to be raised, and is certain to succeed when raised." *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir. 1994); *see also Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (finding that meritorious affirmative defenses asserted by defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001) (finding that defendant's meritorious defense of qualified immunity applied to other unserved defendants who could have raised the same defense). Moreover, "a *sua sponte* dismissal may be appropriate where an affirmative defense [of failure to exhaust administrative remedies] is obvious from the face of the complaint." *Fletcher v. Myers*, 2013 U.S. App. LEXIS 1180, at *3 (6th Cir. Jan. 4, 2013) (citing *Jones*, 549 U.S. at 215.)

As previously discussed, Plaintiff failed to properly exhaust his administrative remedies. Plaintiff concedes this fact in his complaint. (Doc. 1 ¶ 21.) Thus I suggest that Plaintiff's claims against the MDOC Defendants and Corizon should also be dismissed for failure to exhaust administrative remedies.

### III. CONCLUSION

For all the reasons stated above, I recommend that Petal's motion to dismiss (Doc. 39) be **granted** and that Plaintiff's claim against all defendants should be **dismissed without prejudice**. I therefore recommend that Corizon's motion to dismiss (Doc. 19) should be **denied**

**as moot**, and MDOC Defendant's motion for summary judgment (Doc. 32) should be **denied as moot**.

## IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.

If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 23, 2015                    S/ Patricia T. Morris
                                            Patricia T. Morris
                                            United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Earl Arnold #308227 at Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221.

Date: December 23, 2015                     By s/Kristen Krawczyk
                                            Case Manager to Magistrate Judge Morris